**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES O'BRIEN (Star No. 20466), | ) | JURY TRIAL DEMANDED |
| GERALD CARROLL, JOHN HALLORAN, | ) | |
| ESTATE OF EDWARD TRIGGS, | ) | |
| CHICAGO POLICE DETECTIVE ROLSTON | ) | |
| (Star No. 20101), CHICAGO POLICE | ) | |
| DETECTIVE McINERNEY (Star No. 20202), | ) | |
| CHICAGO POLICE DETECTIVE MOSER | ) | Case No. 07 C 3994 |
| (Star No. 20465), CHICAGO POLICE | ) | |
| DETECTIVE GRAF (Star No.20480), | ) | |
| ESTATE OF CHICAGO POLICE DETECTIVE | ) | The Hon. Charles P. Kocoras |
| THOMAS M. COUGHLIN (Star No. 20983), | ) | |
| CHICAGO POLICE DETECTIVE RICHARDS | ) | |
| (Star No. 21200), CHICAGO POLICE | ) | |
| SERGEANT BONKE (Star No. 2108), | ) | |
| and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | | |

**REVISED SECOND AMENDED COMPLAINT**

Plaintiff, ROBERT WILSON, by his undersigned attorneys, complains of Defendants

JAMES O'BRIEN, GERALD CARROLL, JOHN HALLORAN, ESTATE OF EDWARD

TRIGGS, CHICAGO POLICE DETECTIVE ROLSTON (Star No. 20101), CHICAGO POLICE

DETECTIVE McINERNEY (Star No. 20202), CHICAGO POLICE DETECTIVE MOSER

(Star No. 20465), CHICAGO POLICE DETECTIVE GRAF (Star No. 20480), ESTATE OF

CHICAGO POLICE DETECTIVE THOMAS M. COUGHLIN (Star No. 20983), CHICAGO

POLICE DETECTIVE RICHARDS (Star No. 21200), CHICAGO POLICE SERGEANT

BONKE (Star No. 2108) and the CITY OF CHICAGO as follows:

## INTRODUCTION

1. In 1997 and continuing thereafter, the above-named Defendant Chicago Police Officers and other as-yet-unknown Chicago Police Officers engaged in a conspiracy to cause Plaintiff Robert Wilson to be convicted in the Circuit Court of Cook County of the attempted murder of June Siler – a crime he did not commit – and to endure nine years of wrongful incarceration. The Defendants' misconduct also allowed one Jerryco Wagner, Ms. Siler's actual assailant, to remain free and commit a series of additional attacks on other persons in the weeks following Plaintiff's arrest.

2. The Defendants' conspiracy included the presentation at Plaintiff's criminal trial of evidence Defendants had fabricated. The Defendants conspired to manipulate the victim-eyewitness and persuaded her to positively and unhesitatingly identify Plaintiff as her attacker, even though she did not initially believe that Plaintiff was her assailant – a fact that the Defendants hid from Plaintiff and the trier of fact at the State trial. The Defendants and others also hid from Plaintiff and the trier of fact at the State trial the fact that one or more Chicago Police Officers had questioned Jerryco Wagner regarding the Siler attack and Wagner had confessed to them that he had committed that attack.

3. In addition, the Defendants introduced Plaintiff's false confession to the crime, which they coerced from him over the course of a 30-hour interrogation process that involved physical abuse, denial of necessary medication, threats, and false promises of leniency, all circumstances that were concealed from the State fact finder.

4. As a result of the Defendants' misconduct, Plaintiff has endured extraordinary hardship and suffered incalculable pain, for which he seeks redress with this suit.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution, as well as to redress the deprivation of Plaintiff's rights under state law.

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Venue is proper under 28 U.S.C. § 1391(b). The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

7. Plaintiff Robert Wilson, 51, is an African American man and resides in the City of Chicago.

8. Defendant City of Chicago is an Illinois municipal corporation which employs or employed the Defendant Chicago Police Officers.

9. At all times relevant hereto, Defendants James O'Brien, Gerald Carroll, John Halloran, Edward Triggs, Chicago Police Detective Rolston (Star No. 20101), Chicago Police Detective Mcinerney (Star No. 20202), Chicago Police Detective Moser (Star No. 20465), Chicago Police Detective Graf (Star No. 20480), Chicago Police Detective Coughlin (Star No. 20983), Chicago Police Detective Richards (Star No. 21200) and Chicago Police Sergeant Bonke (Star No. 2108), were duly appointed members of the Chicago Police Department.

10. Defendants Edward Triggs and Thomas M. Coughlin were deceased at the time this action was instituted. Therefore, the Estate of Edward Triggs (Circuit Court of Cook County Case No. 2007P008153) and the Estate of Thomas M. Coughlin (Circuit Court of Cook County Case No. 2001P001038) are joined in their stead as Defendants in this action.

11. Each of the individual Defendants is sued in his individual capacity, and each acted under color of state law and in the scope of his employment while engaging in the actions alleged in this complaint.

## ALLEGATIONS OF FACT

### Defendants' Misconduct

12. On February 28, 1997, a 24-year-old white woman named June Siler was attacked with a box-cutter while she waited for the bus at 2851 South King Drive in the City of Chicago. The perpetrator did not take her money or attempt to sexually assault her.

13. On March 1, 1997, the day after Siler was attacked, Defendants O'Brien, Carroll and Halloran arrested Plaintiff while he was waiting for the bus at the same stop where Siler had been attacked. Plaintiff is African American, male, and of small stature. He has no other characteristics in common with Jerryco Wagner, who had committed the attack on Siler

14. Rather than continue their investigation of Siler's attack or search for Wagner who was, at this point, in the midst of perpetrating a string of nearly identical assaults, Defendants set about coercing a confession from Plaintiff.

15. Defendants detained Plaintiff for 30 hours to coerce his confession, which only came after Plaintiff had maintained his innocence for well over a full day. During that 30-hour period, Defendants O'Brien and an Assistant State's Attorney named William Healy and other persons whose identities are not known to Plaintiff engaged in one or more of the following tactics: (a) physically abusing Plaintiff; (b) denying Plaintiff adequate sleep and food; (c) denying Plaintiff his necessary blood pressure medication; (d) intimidating Plaintiff; (e) promising Plaintiff leniency if he confessed; and (f) threatening Plaintiff with violence if he did not.

4

16. As a result of the foregoing misconduct, Plaintiff was placed in fear of his life. Believing that he would be killed or seriously injured if he did not confess, Plaintiff admitted attacking Siler even though he was and is innocent of that offense. In a subsequent, oral statement, Plaintiff concocted an account of his "attack" on Siler that incorporated the information he had learned while in custody and included a number of details that conflicted with Siler's account. ASA Healy paraphrased Plaintiff's account in a handwritten statement, which was ultimately signed by Plaintiff, Healy, and Defendant O'Brien. There was no video or audio or stenographic record made of either Plaintiff's interrogation or of the confession.

17. Following Plaintiff's signing of the statement, Defendants O'Brien, Carroll and Halloran prepared a false police report in which they stated that Plaintiff had confessed to the attack on Siler but omitted any mention of the tactics described above in paragraph 15.

18. In addition to coercing Plaintiff's confession, Defendants O'Brien, Carroll and Halloran, acting jointly and in conspiracy with the remaining individual Chicago Police Officer Defendants and other unknown co-conspirators, manipulated Siler into positively and unequivocally identifying Plaintiff as her attacker even though Siler initially denied that Plaintiff was the perpetrator. The Defendants' manipulative tactics included but were not limited to the following: (a) presenting Siler with a suggestive photo array; (b) informing Siler that they had a person in custody as her attacker and thereby suggesting that Plaintiff was her assailant; (c) disregarding Siler's initial assertions that Plaintiff appeared too old in the photo of him to have been her attacker; (d) telling Siler that she had to unequivocally identify Plaintiff as her attacker even though the most she could say was that Plaintiff "looked like" her assailant; and (e) engaging in other manipulative actions not yet known to Plaintiff.

19. Following their manipulation of Siler, Defendants O'Brien, Carroll and Halloran prepared a false police report in which they stated that, after being presented with a photo array, Siler had "immediately identified [Plaintiff] as the offender." Acting jointly and in conspiracy, all Defendants concealed from Plaintiff and his criminal trial counsel the fact that they had manipulated Siler into identifying Plaintiff. At Plaintiff's trial, Siler identified Plaintiff as her attacker.

20. In the two weeks following his attack on Siler, Jerryco Wagner committed a series of five additional random attacks, all highly similar in *modus operandi*. Like the attack on Siler, each of Wagner's five other attacks was: (a) perpetrated against a white person (in one case the victim was an Hispanic whom Wagner believed to be white); (b) committed without an apparent motive such as robbery or sexual assault; (c) perpetrated against a random victim on the street; (d) a stabbing; and (e) committed within roughly a one-and-a-half mile radius of the attack on Siler. When he was arrested on March 15, 1997, while fleeing the scene of his final attack, Jerryco Wagner was wearing a pair of black Velcro shoes matching a description that Siler had given of her attacker's footwear.

21. Defendant Detective Edward Triggs participated in the investigation of the Siler assault and the other five attacks perpetrated by Wagner. Because of the striking similarity between the Siler attack and the other five attacks, the individual Chicago Police Officer Defendants knew or should have known that all of the attacks in the series (starting with Siler's) were likely perpetrated by the same person and that Plaintiff, who was arrested on March 1, 1997, could not have been the attacker.

6

22. Wagner closely matched the description that Siler had given of her attacker – including the clothing and unusual Velcro shoes that Siler had described. Following his arrest on March 15, the Chicago Police charged Wagner with the five attacks following the Siler assault.

23. Acting at the specific request of Defendant Carroll, one or more Chicago Police Officers whose identities are not yet known to Plaintiff questioned Wagner regarding the Siler attack. Wagner admitted to these Officers that he had committed the crime. The Defendants and their co-conspirators did not charge Wagner with the Siler attack (because they had already manipulated Siler into identifying Plaintiff and had coerced Plaintiff into confessing). Defendants concealed Wagner's admission from Plaintiff and his criminal defense counsel.

### The Malicious Prosecution

24. In November 1999, Plaintiff stood trial in the Circuit Court of Cook County for the attempted murder of June Siler. As a proximate result of the Defendants' misconduct described above, Plaintiff was wrongfully convicted and sentenced to 30 years incarceration in the Illinois Department of Corrections.

25. The only evidence that the State presented to connect Plaintiff to the attack on Siler was Plaintiff's coerced confession and Siler's manipulated testimony. There was no other evidence connecting Plaintiff to this crime. But for the coerced confession, the tainted identification, and the concealment of Wagner's confession, all resulting from the misconduct of Defendants and their co-conspirators, Plaintiff would have been neither prosecuted nor convicted.

26. During the criminal proceedings, Plaintiff's trial counsel attempted to introduce evidence regarding Wagner's other five attacks, in order to establish that Wagner, not Plaintiff,

had attacked Siler in the course of a violent, racially motivated crime spree. Plaintiff's counsel was barred from introducing this evidence.

28. 27. During the criminal proceedings, Plaintiff's family attempted to show Siler a photograph of Jerryco Wagner. Despite her desire to see the photograph, Assistant State's Attorneys assigned to the prosecution of Plaintiff refused to allow Siler to observe the Wagner photograph and falsely informed her that there was no possible connection between the crimes of which Wagner was accused and her case.

## Plaintiff's Exoneration

28. After his conviction, Plaintiff appealed to the Illinois Appellate Court, which affirmed his conviction. Plaintiff then filed a petition for leave to appeal to the Illinois Supreme Court, which the Illinois Supreme Court summarily denied. Thereafter, Plaintiff filed a timely Petition for Post-Conviction relief with the trial court. After that petition was denied, he filed an appeal with the Illinois Appellate Court; it denied his appeal. Then, the Illinois Supreme Court summarily denied his petition for leave to appeal the Illinois Appellate Court's decision.

29. After exhausting his state court remedies, Plaintiff filed a petition for a writ of habeas corpus on January 13, 2006, in the Northern District of Illinois.

30. On October 20, 2006, Judge Ruben Castillo granted Plaintiff a writ of habeas corpus. Judge Castillo found that Plaintiff's "Sixth Amendment right to present a complete defense" had been violated by the state court's refusal to admit evidence at trial pertaining to Jerryco Wagner. *Wilson v. Firkus*, 457 F. Supp. 2d 865, 889-90 (N.D. Ill. 2006).

31. Following Plaintiff's exoneration, June Siler learned, for the first time, the details of Wagner's violent crime spree. After learning this new information, Siler recanted her

8

identification of Plaintiff as her attacker. Siler has since apologized to Plaintiff for the harm her manipulated testimony caused to him.

32. On November 30, 2006, the State chose not to initiate a new trial and dismissed its appeal of Judge Castillo's ruling, and Plaintiff became a free man for the first time in nine years.

## Plaintiff's Damages

33. Plaintiff has suffered enormous injury as a direct and proximate result of the misconduct of the Defendants alleged in the preceding paragraphs. Plaintiff spent more than nine years imprisoned for a crime of which he was completely innocent, not knowing whether he would ever succeed in proving the wrongfulness of his incarceration. Following his wrongful arrest, Plaintiff was separated from family and friends. He lost his relationship with his partner, Jane Thomas, and was deprived of the opportunity to help to raise his three children, Robert Wilson, Jr., Joshua Thomas, and James Thomas.

34. Plaintiff was wrongly condemned by most who came in contact with him as a brutal assailant, which caused Plaintiff great anguish, shame, and humiliation. Plaintiff's years of incarceration were lonely and arduous. In addition to the loss of his life partner and his daily relationship with his children, Plaintiff was deprived of opportunities to pursue a vocation and to live as a free citizen.

35. While incarcerated, Plaintiff suffered daily humiliations and indignities. Although Plaintiff always worked while in prison, he was paid virtually nothing for his labor. Plaintiff anguished daily at his loss of freedom and the suffering his children were forced to endure as a result of his absence.

36. Following his release from custody, Plaintiff has struggled to learn and pursue a vocation. He suffers constantly from the feeling that life's opportunities have been stolen from him. Plaintiff must also contend with lasting psychological damage caused by his Defendant interrogators, who used a variety of traumatizing and coercive tactics to extract a confession from him and then used his own words to deprive him of his liberty for nine years.

**Policies and Practices: Malicious Prosecutions**

37. Defendants violated Plaintiff's constitutional rights and otherwise injured him as a proximate result of their adherence to a City of Chicago policy and practice to "solve" serious, high profile crimes with little regard for the guilt or innocence of the alleged offender. The City's adherence to this policy and practice over the course of many years has resulted in numerous false convictions and flawed investigations.

38. In Plaintiff's case, the tactics utilized in furtherance of this policy and practice included, but were not limited to: (a) use of coercion and manipulation to obtain confessions; (b) use of coercion and manipulation to influence witness testimony; (c) fabrication of evidence; (d) withholding of exculpatory information; and (e) use of any other illegal tactics that might help to secure a conviction, without regard to the actual innocence or guilt of the accused. Similar tactics have been used in numerous other cases.

39. The Chicago Police Department command personnel knew of this institutional desire to resolve criminal allegations with little regard for whether the alleged offender had committed the crime. They themselves participated in this practice, which was designed to enhance police officers' personal standing in the Department.

40. The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Chicago Police Department during the time period at issue, existed, and thrived because municipal policymakers failed to address them.

41. In addition to Plaintiff, the policies and practices described in the preceding paragraphs have caused 46 demonstrably innocent people (*i.e.,* persons whose convictions have been overturned in circumstances indicative of their innocence) to have been incarcerated following flawed Chicago Police Department investigations. Many other victims of these policies and practices remain incarcerated today, unable to demonstrate their innocence.

42. The widespread practices described in the preceding paragraphs occurred because, with regard to the Police Department, the City failed: (a) to implement sufficient training; (b) to engage in meaningful oversight; and/or (c) to discipline officers accused of misconduct.

43. Chicago Police Officers had every reason to know that fabricating a criminal case against Plaintiff or any other innocent person posed them no threat of criminal prosecution or Departmental discipline. They also knew that they would benefit from closing cases, whether or not the person convicted had committed the crime. Because of these conditions, this system proximately caused abuses such as the misconduct at issue in this case.

## COUNT I
## 42 U.S.C. § 1983 – Due Process

44. Plaintiff repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

45. As described more fully above, all of the individual Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

46. In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence and fabricated false reports, thereby misleading and misdirecting the

11

criminal prosecution of the Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

47. The Defendants' misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

48. As a result of this deprivation of his constitutional right to a fair trial, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

49. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

50. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department described in the preceding paragraphs, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.

## COUNT II
## 42 U.S.C. § 1983 – Coerced Confession

51. Plaintiff repeats and realleges paragraphs 1 through 50 as if fully alleged herein.

52. The actions of all of the individual Defendants in coercing Plaintiff to confess falsely to the attempted murder of June Siler, as more fully alleged above, violated Plaintiff's rights under the Fifth and Fourteenth Amendments of the United States Constitution to be free from compulsory self-incrimination and deprivation of liberty without due process of law. Those actions were shocking to the conscience.

53. As a direct and proximate result of the Defendants' coercion of Plaintiff's false confession, as more fully alleged above, Plaintiff was wrongfully convicted of the attempted murder of Siler and suffered damages as more fully alleged above.

54. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

55. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department described in preceding paragraphs, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.

## COUNT III
## 42 U.S.C. § 1983 – Conspiracy

56. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully alleged herein.

57. The individual Defendants reached an agreement amongst themselves to falsely charge Plaintiff with the Siler attack and to deprive Plaintiff of his constitutional rights, as described above.

58. Each individual Defendant conspired, and continues to conspire, to deprive Plaintiff of exculpatory evidence and information to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described above.

59. In this manner, the individual Defendants, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

60. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

61. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated. He suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

62. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's constitutional rights.

13

63. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.

### COUNT IV
### 42 U.S.C. § 1983 – Failure to Intervene

64. Plaintiff repeats and realleges paragraphs 1 through 63 as if fully alleged herein.

65. In the manner described above, during the constitutional violations described above, one or more of the Defendants (and other as-yet-unknown individuals) stood by without intervening to prevent the misconduct.

66. As a result of this failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

67. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

68. The misconduct described in this Count was undertaken pursuant to Chicago's policy and practice in the manner described in the preceding paragraphs.

### COUNT V
### State Law Claim – Malicious Prosecution

69. Plaintiff repeats and realleges paragraphs 1 through 68 as if fully alleged herein.

70. Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

71. The Defendants identified above accused Plaintiff as a perpetrator of criminal activity knowing those accusations to be without probable cause. Assistant State's Attorney Healy caused the criminal prosecution of Plaintiff to be initiated knowing that Plaintiff had been coerced into confessing to the Siler attack. The individual Chicago Police Officer Defendants made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

72. The individual Chicago Police Officer Defendants' statements regarding Plaintiff's alleged culpability were made with knowledge that such statements were false and perjured. All of the individual Defendants fabricated evidence and withheld exculpatory information.

73. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's constitutional rights.

74. As a result of this misconduct, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT VI
### State Law Claim – Civil Conspiracy

75. Plaintiff repeats and realleges paragraphs 1 through 74 as if fully alleged herein.

76. As described more fully in the preceding paragraphs, the individual Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

77. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

78. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's constitutional rights.

79. As a proximate result of Defendants' conspiracy, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT VII
### State Law Claim – Intentional Infliction of Emotional Distress

80. Plaintiff repeats and realleges paragraphs 1 through 79 as if fully alleged herein.

81. The acts and conduct of the individual Defendants as set forth above were extreme and outrageous. The Defendants intended to cause or were in reckless disregard of the probability that their conduct would cause severe emotional distress to Plaintiff, as is more fully alleged above.

82. The individual Defendants' actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

83. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others and to Plaintiff's constitutional rights.

84. As a proximate result of Defendants' wrongful acts, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT VIII
### State Law Claim – Respondeat Superior

85. Plaintiff repeats and realleges paragraphs 1 through 84 as if fully alleged herein.

86. In committing the acts alleged in the preceding paragraphs, all of the individual Chicago Police Officer Defendants were members of, and agents of, the Chicago Police Department, acting at all relevant times with the scope of their employment and under color of law.

87. Defendant City of Chicago is liable as principal for all torts committed by its

agents.

## COUNT IX
## State Law Claim – Indemnification

88. Plaintiff repeats and realleges paragraphs 1 through 87 as if fully alleged herein.

89. Illinois law provides that public entities are directed to pay any tort judgment form compensatory damages for which employees are liable within the scope of their employment activities.

90. The Defendant Chicago Police Officers are or were employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff Robert Wilson prays that this Court enter judgment in his favor and against Defendants James O'Brien, Gerald Carroll, John Halloran, Edward Triggs, Chicago Police Detective Rolston (Star No. 20101), Chicago Police Detective McInerney (Star No. 20202), Chicago Police Detective Moser (Star No. 20465), Chicago Police Detective Graf (Star No. 20480), Chicago Police Detective Coughlin (Star No. 20983), Chicago Police Detective Richards (Star No. 21200), Chicago Police Sergeant Bonked (Star No. 2108), and the City of Chicago, awarding compensatory damages, costs and attorneys fees and punitive damages against each of the individual Defendants in their individual capacities; and for such further and additional relief as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury.

                                                        Respectfully submitted,

                                                        **ROBERT WILSON**

                                                        By:___/s/ Locke E. Bowman_____
                                                               One of his attorneys

Locke E. Bowman
MacArthur Justice Center
Northwestern University School of Law
357 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-0844; (312) 503-1272 (Fax)

J. Samuel Tenenbaum
Bluhm Legal Clinic
Northwestern University School of Law
357 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-8576; (312) 503-8977 (Fax)