IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT WILSON, | ) | |
| Plaintiff, | ) ) ) | |
| | ) | No. 07 C 3994 |
| v. | ) ) | The Hon. Charles P. Kocoras |
| JAMES O'BRIEN, et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION IN LIMINE FOR LEAVE TO INTRODUCE
"OTHER BAD ACTS" EVIDENCE OF DEFENDANT JAMES O'BRIEN**

Plaintiff Robert Wilson, by his undersigned attorneys, respectfully moves this Court for entry of an order allowing Plaintiff to introduce at trial "other acts" evidence of Defendant James O'Brien, pursuant to FED.R.EVID. 404(b). In support, Plaintiff states:

1.  At a hearing in this matter on February 17, this Court directed Plaintiff to prepare a motion in limine regarding whether Plaintiff may introduce evidence of "other bad acts" of Defendant James O'Brien in order to show that O'Brien intended to use physical violence to elicit Plaintiff's confession to the attempted murder of June Siler. The Court instructed Plaintiff to address two separate issues in the motion: (a) whether evidence of O'Brien's other acts is admissible under FED.R.EVID. 404(b) and 403; and (b) whether, if the evidence is admissible, Plaintiff may use extrinsic evidence of those acts to impeach O'Brien's anticipated denials of having committed the misconduct. Plaintiff addresses each of these issues in the following two sections.

**A. EVIDENCE OF O'BRIEN'S "OTHER ACTS" IS ADMISSIBLE UNDER FED.R.EVID. 404(b) TO SHOW O'BRIEN'S INTENT TO ELICIT AN INVOLUNTARY CONFESSION.**

2.  On his direct examination, Plaintiff is expected to testify that Defendant O'Brien was his principal interrogator in the interrogation that led to his false confession to the attempted murder

of June Siler. Plaintiff will testify as to the following facts concerning his interrogation by Defendant O'Brien:

    a. O'Brien confined Plaintiff in a non-public interrogation room in Area 1 Police Headquarters where Plaintiff was inaccessible to non-law enforcement observers and unable to contact a lawyer or family members.

    b. Plaintiff was handcuffed throughout the interrogation and unable to use his hands to defend himself against physical assault.

    c. O'Brien demanded that Plaintiff confess to the Siler attack, a charge that Plaintiff repeatedly denied.

    d. As Plaintiff continued to deny culpability, O'Brien became angry and menacing. His questioning began to be accompanied by threatening language and gestures.

    e. Ultimately, O'Brien repeatedly struck Plaintiff on the head with sharp, totally unexpected blows that were extremely frightening to Plaintiff.

    O'Brien's physical blows were followed by threats of future violence if Plaintiff did not confess.

    f. Defendant Halloran was present during the interrogation and failed to intervene to stop O'Brien's abuse, which made Plaintiff realize that (a) Halloran approved of O'Brien's tactics and (b) Plaintiff was not going to be protected by any of the other officers on duty.

    g. Plaintiff gave a false confession to the Siler attack, among other reasons, in order to stop the assault and because he was afraid he would suffer more violent beatings if he did not confess.

3.     Plaintiff seeks an order authorizing him to question O'Brien on adverse direct examination concerning other occasions on which he has been accused of engaging in similar interrogation misconduct in order to elicit a confession. These "other bad acts" are relevant and admissible under FED.R.EVID. 404(b) to show that Defendant O'Brien's abuse of Plaintiff was committed with the intent to extract an involuntary confession from Plaintiff. Plaintiff seeks to question O'Brien concerning the following similar instances of interrogation misconduct.

**Cortez Brown**

4.     On or about September 21, 1990, O'Brien and other Chicago Police detectives interrogated Cortez Brown concerning two murders. Brown has testified that he was physically

2

abused during his interrogation and, on May 22, 2009, the Circuit Court of Cook County entered an order vacating his murder conviction and ordering a new trial in his case based on the finding that Brown's confession was involuntary. 5/22/2009 Tr. of Proceedings in *People v. Cortez Brown,* No. 90 CR 23997 at 8 (Cir. Ct. Cook Cty.) (ruling of Judge Clayton J. Crane) (Ex. A). Plaintiff has a good faith basis to question O'Brien[1] as to the following circumstances of Brown's interrogation:

   a. O'Brien confined Brown in a non-public interrogation room in Area 3 Police Headquarters where Brown was inaccessible to non-law enforcement observers and unable to contact a lawyer or family members, despite Brown's repeated requests to contact his lawyer.

   b. Brown was handcuffed throughout the interrogation and unable to use his hands to defend himself against physical assault.

   c. O'Brien and/or other Chicago Police interrogators demanded that Brown confess to the murders of Curtis Sims and Devin Boelter, murders that Brown repeatedly denied having committed.

   d. O'Brien and two other Chicago Police detectives repeatedly slapped and punched Brown on the side of his head every time he attempted to invoke his Fifth Amendment right to remain silent.

   e. During at least a portion of the detectives' physical abuse of Brown, other Chicago Police detectives were also present in the room, which made Brown realize that (a) the other officers approved of the tactics of O'Brien and the other abusing officers and (b) Brown was not going to be protected by any of the other officers on duty.

   f. Brown confessed because he feared further violence if he did not confess to the crimes under investigation.

### Ivan Smith

5. On or about November 9, 1991, Defendant O'Brien and his then-partner Joseph Stehlik interrogated Ivan Smith in a Tipton County, Tennessee jail about a drive-by shooting that

---

[1] The good faith basis for these questions comes from the testimony of Cortez Brown during a post-conviction hearing on May 18, 2009 in the Circuit Court of Cook County in *People v. Cortez Brown,* No. 90 CR 23997. *See* Tr. of Proceedings at 55, 63-66 (Ex. B). In that testimony, Brown describes the events that are set forth in the text of this motion.

3

occurred in Chicago on August 7, 1991. Plaintiff has a good faith basis to question O'Brien[2] as to the following aspects of Smith's interrogation:

    a. O'Brien and Stehlik interrogated Smith while he was confined in a non-public detention facility where Smith was inaccessible to non-law enforcement observers and unable to contact a lawyer or family members. They denied Smith's requests to call his mother and his attorney.

    b. Smith was shackled to a table throughout the interrogation and unable to use his hands to defend himself against physical assault.

    c. O'Brien and Stehlik demanded that Smith make a statement inculpating himself and another person (then in Chicago Police custody) in the shooting under investigation and Smith repeatedly refused to make the statement.

    d. O'Brien repeatedly slapped and punched Smith around the head and on his chest and continued hitting Smith until he agreed to sign a statement.

    e. During O'Brien's physical abuse of Smith, Stehlik was also present in the room, which made Smith realize that (a) the other officer approved of the O'Brien's tactics and (b) Smith was not going to be protected by any other officer on duty.

    f. Smith confessed because he feared further violence if he did not confess to the crime under investigation.

### Jesse Clemon

6. On or about September 26, 1991, Defendant O'Brien and Chicago Police Detective Anthony Maslanka interrogated Jesse Clemon at Area 3 police headquarters in Chicago about a murder. Plaintiff has a good faith basis to question O'Brien[3] as to the following aspects of the Jesse Clemon interrogation:

---

[2] The good faith basis for these questions comes from Mr. Smith's testimony at a suppression hearing in 1994. *See* 04/15/94 Tr. of Proceedings in *People v. Terrance Brooks*, No. 91 CR 21147 at 270-81 (testimony of Ivan Smith) (Ex. C).

[3] The good faith basis for this questioning derives from evidence adduced during a suppression hearing as well as the decision of the Circuit Court of Cook County to suppress Clemon's confession, which was affirmed on appeal. Myron James, who was taken into custody at the same time as Clemon, testified that upon emerging from the Area 3 interview room where he was questioned by O'Brien and Maslanka, Clemon was limping and stating that he was sick. 11/09/92 Tr. of Proceedings in *People v. Jesse Clemon*, No. 91 C 25414 at A-12 – A-14 (Cir. Ct. Cook Cty.) (Ex. D). Jesse Clemon's brother, Imari Clemon, was also in custody at the time and testified at the suppression hearing that he heard his brother "hollering" and saw the interrogation officers, who included O'Brien, hitting

  a. O'Brien and Maslanka interrogated Clemon in a non-public interrogation room at Area 3 police headquarters where Clemon was inaccessible to non-law enforcement observers, segregated from his family and was refused access to a lawyer.

  b. O'Brien and other officers repeatedly struck Clemon around the face, causing him to scream and "holler."

  c. Following this abuse, Clemon signed a statement confessing to involvement in the murder under investigation.

### CR Complainant (October 2, 1996)

7. On or about October 2, 1996, Defendant O'Brien and one other Chicago Police Detective questioned a suspect[4] at Area 1 regarding a homicide under investigation. Plaintiff has a good faith basis to question O'Brien[5] as to the following aspects of that interrogation:

  a. O'Brien and another Chicago Police detective confined the Complainant in a non-public interrogation room in Area 1 police headquarters where the Complainant was inaccessible to non-law enforcement observers and unable to contact a lawyer or family members.

  b. The Complainant was handcuffed to a ring on the wall throughout the interrogation and unable to use his hands to defend himself against physical assault.

  c. O'Brien demanded that that the Complainant identify gang members who were involved in the homicide under investigation.

---

Jesse around the face. Imari Clemon stated that Jesse Clemon had "a knot" on his eye after the interrogation, as a result of O'Brien's abuse. 09/14/92 Tr. of Proceedings in *People v. Jesse Clemon*, No. 91 C 25414 at 14-15, 19 (Cir. Ct. Cook Cty.) (Ex. E). Judge Strayhorn granted the motion to suppress Jesse Clemon's signed confession, concluding both that Myron James was a credible witness and that the officers at Area 3 had created a "horrendously oppressive" atmosphere during the interrogation. 11/19/92 Tr. of Proceedings in *People v. Jesse Clemon*, No. 92 C 25414 at 37 (Cir. Ct. Cook Cty.) (ruling of Judge Earl E. Strayhorn granting motion to suppress) (Ex. F). The Appellate Court upheld the Circuit Court's decision to suppress the confession. *People v. Jesse Clemon*, 259 Ill. App. 3d 5 (1st Dist. 1994) (Ex. G).

[4] Pursuant to the parties' agreement, the name of this suspect was redacted from the complaint register file that the defendants produced in discovery in this case.

[5] The good faith basis derives from the information contained in the Chicago Police Complaint Register file (#235801) regarding the interrogation, which names O'Brien as an accused officer. That file was produced to Plaintiff subject to protective order and is therefore not attached to this motion. It is available for the Court's review.

    d. When the Complainant told O'Brien that he did not know the involved gang members, O'Brien struck him on and around his face multiple times.

    e. When the Complainant refused to sign a document, O'Brien grabbed the Complainant's neck, pushed him backwards into a wall and threatened to split his lip if he did not cooperate.

    f. The Complainant signed a statement confessing to murder in order to stop O'Brien's physical abuse.

8. Evidence concerning each of these "other bad acts" is relevant and admissible in this case as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED.R.EVID. 404(b). Specifically, "the 'intent' exception to Rule 404(b) may [] be used … to admit prior [acts] 'because the repetition of the [act] is itself circumstantial proof of intent, not direct proof of a propensity to commit [the act].'" *Young v. Rabideau*, 821 F.2d 373, 379 (7th Cir. 1987) (quoting *United States v. Fountain*, 768 F.2d 790, 805 (7th Cir.1985) and citing *Carson v. Polley*, 689 F.2d 562, 572-73 (5th Cir. 1982)).

9. This principle has been applied repeatedly in cases involving excessive force during interrogations. In *Carson*, the Fifth Circuit admitted the performance evaluation of the defendant Deputy Sheriff, after finding that the Deputy's "loss of temper and consequent intentional hostility towards other detainees on earlier occasions made it more likely that a similar intent was present in [the Deputy's] conduct towards [the plaintiff]." *Carson*, 689 F.2d 562, 573 (5th Cir. 1982). And in *Edwards v. Thomas,* 31 F. Supp. 2d 1069 (N.D. Ill. 1999), the court held that evidence of the defendant's prior bad act was admissible at trial because his history of abusive interrogations demonstrated his "intention to commit assault and battery on [the plaintiff]." *Id*. at 1074. *See also Finley v. Lindsay*, No. 97-C-7623, 1999 WL 608706, at *3 (N.D. Ill. Aug. 5, 1999) (defendant officer's disciplinary record admissible to show officer's intent to commit assault and battery); *Petrovic v. City of Chicago*, No. 06-C-611, 2008 WL 818309, at *2 (N.D. Ill. Mar. 21, 2008) (admitting evidence of a sustained excessive force complaint and testimony from the filer of the

6

complaint under Rule 404(b)). These decisions follow the holding of *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993), in which Judge Posner found that evidence concerning the use of torture in interrogations by Burge-connected officers was both relevant and admissible in order to show "intent, opportunity, preparation, and plan," in accordance with 404(b). *Id*. at 1238.

  10. Three factors must be satisfied for a court to admit prior evidence of misconduct pursuant to FED.R.EVID. 404(b) and 403: (a) the previous acts must be "similar and close enough in time to be relevant to the matter in issue;" (b) there must be evidence to support "a jury finding that the defendant committed the similar act;" and (c) "the probative value of the evidence [may not be] substantially outweighed by the danger of unfair prejudice." *United States v. Zapata*, 871 F.2d 616, 620 (7th Cir. 1989); *see also United States v. Williams*, 31 F.3d 522, 527 (7th Cir. 1994). Evidence of Defendant O'Brien's prior acts satisfies each of these factors.

  11. *First,* the above incidents in which O'Brien was accused of using excessive force and physical abuse are "similar" to the interrogation that O'Brien conducted of Plaintiff. *Cf. Akbar v. City of Chicago*, No. 06 C 33685, 2009 WL 3335364, at *2 (Oct. 14, 2009) ("Intent, unlike modus operandi, does not require a 'singular strong resemblance' between the prior bad act and the conduct alleged, but instead requires a lesser showing of similarity.") (comparing *United States v. Robinson*, 161 F.3d 463, 468 (7th Cir.1998) with *United States v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir.1995)).

  12. The interrogation approach that O'Brien took against Plaintiff, Brown, Smith, Clemon, and the CR Complainant all followed the following pattern:

   a. Each interrogation occurred in a closed interrogation room where the suspect under interrogation was segregated from outside observers, family, friends and advisors and denied access to a lawyer or a phone.

7

      b. In each instance, O'Brien inflicted physical abuse against the suspect while he was restrained and unable to use his hands to defend himself against the physical assault.

      c. In each instance, O'Brien lost his temper and resorted to physical and psychological abuse after the suspect had refused to provide an admission regarding the crime under investigation.

      d. In each instance, another officer was present in the room and failed to intervene to prevent O'Brien from abusing the suspect, causing the suspect to understand that no other police officer would come to his aid and thereby rendering him even more vulnerable to O'Brien's coercion.

13. There is also sufficient temporal proximity between Plaintiff's interrogation and O'Brien's prior interrogation misconduct for the evidence to be admissible as to Plaintiff's coerced confession claim. *See, e.g., United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005) (finding a nine-year gap between the prior act and the current crime did not foreclose the admissibility of the prior bad acts); *United States v. Wimberly*, 60 F.3d 281, 285 (7th Cir. 1995) (admitting prior bad act evidence that occurred thirteen years prior to charge); *United States v. Mounts*, 35 F.3d 1208, 1214-1215 (7th Cir.1994) (permitting admission of drug purchase that occurred seven years prior to arrest to prove element of intent). Each of the above-listed incidents occurred within a 7-year time period, from 1991 to 1998, a period that encompasses the point in time in which Plaintiff was himself interrogated and abused. Given the similarity of the misconduct involved, these acts are sufficiently close in time to be admissible in Plaintiff's case.

14. *Second,* there is sufficient evidence from which a jury could conclude that the defendant committed the prior act. Specifically, other acts evidence is admissible "if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v.*

8

*United States*, 485 U.S. 681, 689 (1988). Proof from which a jury could conclude that O'Brien committed the other acts of interrogation misconduct may be found in the following judicial findings, live testimony, law enforcement documents, and transcripts of testimony:

    a. The testimony of Cortez Brown, plus the judicial finding that his confession was involuntary would be sufficient for the jury to conclude that Brown was physically and psychologically abused during his interrogation.

    b. The transcribed testimony of Ivan Smith would be sufficient for the jury to conclude that Smith was physically and psychologically abused during his interrogation.

    c. The testimony of the witnesses at the Jesse Clemon suppression hearing combined with the judicial finding (affirmed on appeal) that Clemon's confession was involuntary would be sufficient for the jury to conclude that Clemon was physically and psychologically abused during his interrogation.

    d. The Chicago Police CR file regarding the unidentified Complaint would be sufficient for the jury to conclude that that individual was physically and psychologically abused during his interrogation.

15. *Third*, allowing Plaintiff to introduce Defendant O'Brien's prior bad acts will not create undue prejudice under the terms of FED.R.EVID. 403(b). It is well-established that while "[r]elevant evidence is inherently prejudicial … it is only *unfair* prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Young*, 821 F.2d at 377 (quoting *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir.1985)) (emphasis in original).

16. The relevance of the prior act to the case at hand is a significant determinative of prejudice. In *Carson*, for example, the Court found that the probative value of the Deputy's prior

9

performance evaluation report, documenting his loss of temper with detainees, outweighed its potential prejudicial impact because "[t]he report was recent and specifically referred to [the Deputy's] relations with prisoners." 689 F.2d at 573.  In *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 573-74 (1st Cir. 1989), the First Circuit held that the defendant's complaint files were properly admitted as to the issue of supervisory liability and there was no undue prejudice because "the files were not introduced to show [the defendant's] propensity for violence or to prove that he acted in conformity with his past behavior."  And in *Lewis v. City of Albany Police Dept.*, 547 F. Supp. 2d 191 (N.D.N.Y. 2008), the court similarly found that "the complaints in [the officer's] personnel file were relevant with regard to Lewis's Monell claims against the City," and thus "[t]heir significant probative value as to whether the City failed to take proper steps in light of [the officer's] multiple alleged violations of African-American suspects' constitutional rights was not outweighed by a danger of unfair prejudice." *Id*. at 200 (citing Fed. R. Evid. 105 and 403).

   17. Moreover, any risk of undue prejudice may be properly addressed by the use of a jury limiting instruction.  *See United States v. Sanchez*, 615 F.3d 836, 841-42 (7th Cir. 2010) (holding that the district court eliminated risk of undue prejudice by issuing limiting instructions advising the jury that evidence was relevant only for purpose of showing defendant's motive) (citing *United States v. Strong*, 485 F.3d 985, 991 (7th Cir. 2007)) (court assumed that the jury followed limiting instructions on introduction of 404(b) evidence); *United States v. Williams*, 238 F.3d 871, 873 (7th Cir. 2001) (a limiting instruction on introduction of evidence concerning "motive, opportunity, preparation, plan, knowledge, identity, and absence of mistake" is a safeguard employed by the courts "to minimize the prejudicial effect of such evidence"); *United States v. Hubbard*, 22 F.3d 1410, (7th Cir. 1994) (any prejudicial effect of evidence that defendant had previously sold drugs to government informant was reduced by the court's limiting instruction that the jury was to consider the evidence only on the question of defendant's intent); *Lewis*, 547 F.

Supp. 2d at 200 (no unfair prejudice in admitting prior acts of misconduct "in light of limiting instructions given"). Plaintiff has no objection to such an instruction in this case.

      18. In enacting the Federal Rules of Evidence, "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." *Huddleston*, 485 U.S. at 688. The history of complaints lodged against Defendant O'Brien demonstrates his intent to extract involuntary confessions from suspects.

      19. Therefore, Plaintiff should be permitted to question O'Brien regarding his prior acts of interrogation misconduct.

**B. PLAINTIFF MAY USE EXTRINSIC EVIDENCE OF O'BRIEN'S OTHER BAD ACTS TO IMPEACH HIS ANTICIPATED DENIALS.**

      20. If, as anticipated, Defendant O'Brien denies committing the prior bad acts, Plaintiff should be permitted, in accordance with Fed.R.Evid. 607, to impeach those denials with the following extrinsic evidence:

    a. The testimony of Cortez Brown.

    b. The transcript of Cortez Brown's testimony on May 18, 2009 before Judge Clayton J. Crane of the Circuit Court of Cook County in *People v. Cortez Brown*.

    c. A photograph of Defendant O'Brien, which was admitted in Brown's post-conviction proceedings, to show that Brown was able to identify O'Brien as the lead detective during his interrogation.

    d. The transcript of proceedings on May 22, 2009 in *People v. Cortez Brown*, during which Judge Crane granted Brown's motion for a new trial, after finding the evidence that Brown was abused while in police custody was both "staggering" and "damning."

11

e. A certified copy of the docket sheet in *People v. Cortez Brown*, which documents Judge Crane's ruling granting Brown's motion for a new trial on May 22, 2009.

f. The transcript of Ivan Smith's testimony on April 15, 1994 in *People v. Terrance Brooks*, No. 91 CR 21147.

g. The transcript of Myron James' testimony on November 9, 1992 in *People v. Jesse Clemon,* No. 91 C 25414.

h. The transcript of Imari Clemon's testimony of September 14, 1992 in *People v. Jesse Clemon,* No. 91 C 25414.

i. The transcript of proceedings on November 19, 1992 in *People v. Jesse Clemon,* during which Judge Earl Strayhorn concluded that Myron James was a credible witness, that the detectives at Area 3 had created a "horrendously oppressive atmosphere" during the evening on which Jesse Clemon confessed, and suppressing Clemon's confession.

j. The decision of the Illinois Appellate Court affirming the suppression of Jesse Clemon's confession. *People v. Jesse Clemon*, 259 Ill. App. 3d 5 (1st Dist. 1994).

k. The CR file for Complaint Register # 235801.

21. All of this extrinsic evidence is admissible to controvert O'Brien's denial of his other bad acts. *See Wilson*, 6 F.3d at 1238 (explaining that "since [the defendant officer] had denied under cross-examination that he had ever had or used an electroshock instrument, [the plaintiff's] evidence could also have been used to impeach that denial."); *Sherrod v. Berry*, 856 F.2d 802, 806 (7th Cir. 1988) ("'[I]impeachment by contradiction is a technique well recognized in the federal courts by which specific errors in the witness's testimony are brought to the attention of the trier of fact.'") (citations omitted); *United States v. McGee*, 408 F.3d 966, 981-82 (7th Cir. 2005)

12

("Although Rule 608(b) bars extrinsic evidence of specific instances of conduct bearing on a witness' character for truthfulness, the extrinsic evidence may still be admissible for another reason, such as impeachment for bias, *contradiction*, or prior inconsistent statement.") (emphasis added). Thus, the right of a party to use of extrinsic evidence to impeach a witness by contradicting his testimony is well established. *See, e.g. U. S. v. Fountain,* 768 F.2d 790, 805 (7th Cir. 1985).

22. The use of such extrinsic evidence is limited to non-collateral matters. *U.S. v. Payne,* 102 F.3d 289, 294 (7th Cir. 1996). But here, the extrinsic evidence regarding O'Brien's other bad acts is not a collateral matter. Rather, that evidence goes to O'Brien's intent to elicit confessions by coercion and thus bears directly on O'Brien's intent with respect to the conduct of Plaintiff's interrogation. Therefore, the evidence goes to a central issue in the trial and is not collateral. *Cf. Payne,* 102 F.3d at 294 ("A matter is collateral if it 'could not have been introduced into evidence for any purpose other than contradiction.' To put it another way, 'one may not contradict for the sake of contradiction; the evidence must have an independent purpose and an independent ground for admission.'") (quoting *U.S. v. Kozinski*, 16 F.3d 795, 806 (7th Cir. 1994) (internal citation omitted)). Clearly, the extrinsic evidence regarding O'Brien's bad acts *does* have an independent purpose (apart from merely contradicting O'Brien's denials). Therefore, it must be viewed as non-collateral.

23. As a result, the above-listed extrinsic evidence of Defendant O'Brien's prior bad acts of interrogation misconduct should be admitted to impeach O'Brien's denials of such misconduct.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order granting him leave to question Defendant James O'Brien concerning his prior acts of interrogation misconduct for the purpose of showing intent, pursuant to Federal Rules of Evidence 403 and 404(b), and to offer extrinsic evidence of O'Brien's other interrogation misconduct, pursuant to Rule 404(b) and for purposes of impeachment by contradiction, in accordance with Rule 607.

Respectfully submitted,

**ROBERT WILSON**

By: /s/ Locke E. Bowman
One of his attorneys

Locke E. Bowman
Alexa Van Brunt
Roderick MacArthur Justice Center
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-0844

J. Samuel Tenenbaum
Clinical Assistant Professor
Bluhm Legal Clinic
Northwestern University School of Law
357 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-8576

**CERTIFICATE OF SERVICE**

      The undersigned, an attorney, certifies that he caused the foregoing document to be served upon all counsel who have filed appearances in this case via the court's CM/ECF system on April 8, 2011.

                                                        /s/ Locke E. Bowman