```
 1   STATE OF ILLINOIS   )
                         )   SS:
 2   COUNTY OF COOK      )

 3           IN THE CIRCUIT COURT OF COOK COUNTY
             COUNTY DEPARTMENT-CRIMINAL DIVISION
 4
     THE PEOPLE OF THE        )
 5   STATE OF ILLINOIS        )  Case No.  92 25414
                              )  Charge:  Murder
 6            vs              )  Before:  JUDGE EARL E.
                              )                 STRAYHORN
 7   JESSE CLEMONS            )  November 19, 1992

 8              MOTION TO SUPPRESS

 9   RECORD OF PROCEEDINGS had in the hearing of the

10   above-entitled cause.

11   APPEARANCES:

12              HON. JACK O'MALLEY,
                    State's Attorney of Cook County, by
13              MS. KAY HANLON,
                    Assistant State's Attorney,
14                  appeared on behalf of the People of
                    the State of Illinois;
15
                MR. RANDOLPH N. STONE,
16                  Public Defender of Cook County, by
                MR. FRED WELLISCH,
17                  Assistant Public Defender,
                    appeared on behalf of the Defendant.
18

19

20

21
     KOCHINA V. CHOLEWA
22   Official Court Reporter
     2650 S. California
23   Chicago, Illinois 60608

24
```

SP 119089

**EXHIBIT F**

1

2                              INDEX

3  Date of Hearing:    November 19, 1992

4  Page Numbers:   1 to 41

5                         PROCEEDINGS:

6  LIST OF WITNESSES       DX     CX     RDX     RCX     RDX

7  DET. KENNETH BOUDREAU    6     15     28

8  STATE RESTS------------------------------------------29

9  ARGUMENT:

10  By: Mr. Wellisch-------------------------------------29

11      Ms. Hanlon---------------------------------------36

12  COURT RULING-----------------------------------------40

13

14

15

16

17

18

19

20

21

22

23

24

SP 419090

1  September, 1991?

2      A.   No, ma'am.

3      Q.   While you were present on the same days did

4  you ever allow people in the holding cell marked

5  cage to converse with any of the in-custody

6  defendants who were in any of the other rooms

7      A.   No, ma'am.

8      MS. HANLON: Thank you, Judge.  I have nothing

9  else.

10     THE COURT:  Recross?

11     MR. WELLISCH: I have nothing further.

12     THE COURT:  Thank you, Det. Boudreau.  You may

13  step down.

14                 (Witness excused.)

15     MS. HANLON: We have nothing else in rebuttal.

16  We would rest.

17                 (State rests in rebuttal.)

18     MR. WELLISCH: I would like to argue briefly if I

19  might.

20               It is, is a you know in a case where

21  we are seeking to suppress confession, it is the

22  State's burden to prove by the preponderance of the

23  evidence that this confession was not coerced.

24               What do we have or what has the State

SP 119117

1    presented to you and how have we answered that?

2                    Essentially the State has presented

3    to you what amounts to mere denials on the part of

4    the various officers who were present, beginning way

5    back when we first had testimony with Dets. O'Brien,

6    Police Officer Maras (ph. sp.), I believe his name

7    was, and Det. Maslanka and today rebuttal of Myron

8    James' testimony by Det. Boudreau; mere denials

9    nothing more than that.

10                    We have also raised some questions

11   regarding the injuries of Jesse Clemons.

12                    If you remember way back I hope your

13   notes reflect the fact that we have got a couple of

14   the officers noticing injuries.

15                    Det. Boudreau did not notice any

16   injury to Jesse's hand but several of the officers

17   who testified earlier did.

18                    That raises, should raise a red flag

19   in the Court's mind as to how Jesse got his

20   injuries.

21                    Now however what is key, your Honor,

22   is this.

23                    While the State presented mere

24   denials on the part of the police we put before you

SP 119118

1    last time Myron James.

2                    I hope you will agree that Myron

3    James was a very credible witness.

4                    I want to start out by saying Myron

5    James has no motive to lie, to fabricate.

6                    He began his testimony by saying "no

7    one ever hit me, no one ever tortured me, no one

8    ever threatened me."

9                    He had no axe to grind with any of

10   the police officers; not one.

11                   Beyond that why is he credible?

12   Because unlike the police officers who testified or

13   unlike Det. Boudreau, who testified today and

14   supposedly present for this interrogation on this

15   lineup Myron James remembers where each and every

16   person arrested that night was in Area 3, every

17   single one of them.

18                   Now let's talk about DO for a

19   minute.

20                   You may remember when he testified he

21   said, "I am not quite sure where Diaz Owens was but

22   I remember hearing his voice back here somewhere."

23                   So he didn't even try to fabricate

24   that.  He walks in and says the first thing he

31

1    hears, he walks in with Jesse because they come in

2    the same car is, "I hear Marcus Wiggins screaming."

3              "How do you know?  You don't see

4    him?"

5              "I grew up with Marcus Wiggins.  I

6    know his voice.  He was screaming."

7              During the rest of his testimony,

8    Judge, he tells you exactly what happened.

9              How does he know?  He is sitting on a

10   bench right here outside of Jesse Clemons' room.

11             He later gets moved to the cage.  He

12   is in an essential position.

13             He never said he saw anybody being

14   beaten in the rooms.  What he said was he heard

15   people being beaten in the rooms.

16             He also said he saw police officers

17   going into the office marked DC, that would be where

18   Damoni Clemons was, with something black, not a

19   flashlight, might have looked like a stun gun.

20             Now Myron James is credible.  He

21   couldn't remember, let's see.  I think one of the

22   questions that Miss Hanlon asked was could you

23   describe the officers.

24             He said there were a lot of

SP 119120

1    officers.

2              Did some of them have moustaches she

3    asked?

4              "Yes, some of them did.  I don't

5    remember which ones."

6              Is that relevant or does the fact

7    that his recall is so good about what happened and

8    who got beaten up and what Jesse looked like when he

9    walked out into that lineup?

10             Myron James is a credible witness.

11   His testimony is corroborated to some extent by

12   testimony you heard early on from Jesse's mother,

13   Casandra Clemons who says the police came to her

14   house.  She told them where Jesse might be.  She

15   went in a car with them.  Jesse was later arrested

16   and she is sitting in the alley and she sees them

17   bringing Jesse down the stairs and beating him with

18   their flashlights and their hands.

19             Now the police who testified have not

20   denied that Casandra Clemons was on the scene.  The

21   testimony was that yes she was sitting in a squad

22   car, a separate squad car, when Jesse was arrested

23   and later in Area 3.

24             She said she heard screams.

SP 119121

1    She was not sure which of her sons
2 but several of her sons were being beaten up or she
3 heard their screams.
4         If you combine her testimony with
5 what happened on the street with Myron James' very
6 credible testimony about what happened in the cage
7 this amounts, we feel, to the State not carrying its
8 burden.
9         Its burden is to show that Jesse's
10 confession was not coerced.
11        The officers that testified the first
12 day remembered seeing his hand injured, Det.
13 Boudreau did not. But both Maslanka and Det.
14 O'Brien remembers that his hand was hurt.
15        On top of that, your Honor, Jesse was
16 taken to the hospital.
17        His mother testified that he went to
18 Mercy Hospital and that his hand was injured; he was
19 taken there.
20        Now there is a case, your Honor,
21 People versus Banks, and in People versus Banks the
22 State is required to show how a person injured in
23 police custody got injured.
24        There is a presumption that Clemons

34    SP 119122

1   might have been injured in police custody.  They

2   called Dr. Ramos to show why.

3              But I suggest Dr. Ramos' testimony is

4   very interesting.

5              First of all who brings Jesse Clemons

6   to Dr. Ramos?  The police.  Who takes him back?  The

7   police?  Who are there while he is being examined?

8   The police.

9              Jesse can't really, if he wants to

10  save his hide can't really say to Dr. Ramos in the

11  presence of the police "they beat me up" because he

12  knows when he is taken back he will get beaten

13  again.

14             What does he say?  He says something

15  very interesting, I feel, your Honor.

16             He tells the doctor, he says "how did

17  you injure yourself."

18             "I injured my hand in a fight last

19  night."

20             Now what does last night mean?

21             He is being examined September 26th

22  in the morning.  Last night was the night that he

23  was arrested; in custody.

24             Now on his statement it says, at the

SP 119123

1  bottom of his statement that he signed, "I injured
2  my hand earlier in the week in a fight."
3          What is consistent?  The fact that he
4  injured it in a fight.
5          What is not consistent?  The fact he
6  tells the police, "I injured it earlier in a
7  fight."
8          What is he trying to tell Dr. Ramos?
9  He can't say "the police beat it out of me last
10 night."  But he slips.
11         Where is the truth?  The truth is
12 last night.  Where was he last night?  In police
13 custody.
14         I suggest, your Honor, that the State
15 has not met its burden; that Jesse Clemons'
16 confession was freely and voluntarily given and we
17 would ask you to suppress his confession.
18    MS. HANLON:  To begin with, Judge, the only
19 evidence you heard of any injury to Jesse Clemons
20 was a little injury to his finger.
21         What we have presented to you, Judge,
22 was Dr. Ramos, who testified that she examined him
23 and that Jesse Clemons told her he was involved in a
24 fist fight on September 25th, 1991.

36                          SP 119124

```
1              If you remember, Judge, from Det.
2   O'Brien's testimony that Jesse Clemons was not
3   arrested until 2:00 clock in the morning September
4   26th, 1991.
5              We also presented testimony, Judge,
6   from his handwritten statement, and in that
7   statement it is right in there; Jesse states he
8   injured his finger or injured his hand in a fist
9   fight.
10             That is the way it was. We are not
11  trying to hide that. His finger was injured. It is
12  absolutely true.
13             No evidence that it was injured by
14  the police. Quite to the contrary, Judge, and I
15  don't want to argue, you already denied the motion
16  based on the testimony other than Myron James, which
17  counsel reopened --
18      THE COURT: But I am considering changing. I
19  find James very credible.
20             Given the atmosphere that existed in
21  that District with eleven people under suspicion in
22  custody in the same location the atmosphere must
23  have been horrendously oppressive and I am going to
24  suppress the statements, but you can argue.
```

SP 119125

1   MS. HANLON: I would like to argue because I
2   think that all the witnesses that they presented are
3   inconsistent.
4           The mother initially tells you,
5   Judge, she was there when Jesse was arrested in the
6   apartment.  The police brought her there.  There is
7   no quarrel about that.
8           The police brought her there to find
9   Jesse Clemons.
10          She tells you the beating started
11  inside a house.
12      THE COURT:  I am not talking about the beating.
13  I am concerned about the fact that eleven suspects
14  in the same room being questioned periodically from
15  time to time; that is oppressive.  I am going to
16  suppress it on the basis that I think there is a
17  likelihood there was some screaming going on and I
18  am going to suppress this statement.
19      MS. HANLON:  You don't want to hear any other
20  argument?
21      THE COURT:  You can put your argument on the
22  record but I will suppress the statement.
23      MS. HANLON: First of all Myron James, who he is
24  calling a credible witness, he is on probation for a

38

SP 119126

1     drug charge.

2       THE COURT: That does not make him uncredible

3     because he is on probation.

4       MS. HANLON: How about --

5       THE COURT: You had a chance to cross examine

6     him and you didn't touch him.

7       MS. HANLON: Judge, the only thing I can say as

8     to Myron James is that he testified he is friends

9     with Jesse Clemons, that he has known him for four

10     years, he has been in a gang for seven or eight

11     years. He told you he was friends with Marcus

12     Wiggins.

13          What is interesting, Judge, is that

14     if he now is coming forward to say that he sees

15     someone getting hit, although when I asked him he

16     said he didn't --

17       THE COURT: No. I am not basing my suppression

18     on his credibility as to someone being struck. I am

19     basing my ruling solely on the oppressive atmosphere

20     that existed in that, in that headquarters on that

21     evening with eleven people in custody being

22     questioned about this crime.

23       MS. HANLON: If I may just address that point

24     then as long as you are saying you are not finding

SP 119127

1   it on a beating and not finding it on any of the

2   electric thing they brought up.

3                As far as the oppressive nature,

4   Judge, Area 3 Violent Crimes; this is it.

5       THE COURT: But they don't have to bring eleven

6   people up there.  They have a holding cell

7   downstairs.  That they could have left everybody

8   downstairs and brought them up individually.

9       MS. HANLON: Judge, out of the six defendants

10  there was six defendants charged.

11      THE COURT:  Finish up, Miss Hanlon, please.

12      MS. HANLON: They were all in separate rooms.

13  There is nothing else the police could have done in

14  the case.

15      THE COURT:  Sure there is.

16                Motion to Suppress sustained.

17  January 11th for trial.

18                All right stand in recess until 10:00

19  o'clock tomorrow morning.

20                (Which were all the proceedings had

21                 at the hearing of the above-entitled

22                 cause. Case continued to 1/11/'93.)

23

24

SP 119128

```
 1
 2
 3    STATE OF ILLINOIS  )
                         )    SS:
 4    COUNTY OF COOK     )

 5                         I, ROCHINA V. CHOLEWA, Official
 6    Court Reporter of the Circuit Court of Cook County,
 7    County Department-Criminal Division, do hereby
 8    certify that I reported in shorthand the proceedings
 9    had in the above-entitled cause, that I thereafter
10    caused to be transcribed into typewriting the above
11    Report of Proceedings which I hereby certify is a
12    true and correct transcript of the proceedings had
13    before the Honorable EARL E. STRAYHORN, Judge of
14    said Court.

15
16
17                      Official Court Reporter of the
18                      Circuit Court of Cook County
19
20
21
22
23
24
```

SP 119129